IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-CT-3088-FL

| TED JONES, JR., | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) ORDER |
| JASON McNEIL and CITY OF LUMBERTON, | ) |
| Defendants. | ) |

This matter is before the court on defendants' motions for summary judgment (DE 43, 48) pursuant to Federal Rule of Civil Procedure 56, and motion for requests for admissions to be deemed admitted, for leave to amend dispositive motions, or for other alternative relief (DE 47), by defendant Jason McNeil ("McNeil"). Plaintiff did not respond to the motions. For the reasons that follow, the court grants the motions for summary judgment and denies as moot defendant McNeil's motion.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint in the Superior Court of Robeson County on January 11, 2017, alleging claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendant Jason McNeil ("McNeil"), an employee with the City of Lumberton, sexually assaulted him when plaintiff was participating in an inmate work release program. Plaintiff seeks compensatory and punitive damages.

On March 29, 2017, defendants removed the action to this court, on the basis of 28 U.S.C.

§ 1441(a). On April 7 and 14, 2017, plaintiff filed motions to appoint counsel. On April 24, 2017, defendant City of Lumberton filed motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). On April 28, 2017, the court entered order denying plaintiff's motions to appoint counsel. On May 10, 2017, plaintiff filed motion to amend complaint. Defendant McNeil filed Rule 12(b)(6) motion to dismiss on August 28, 2017.

On February 28, 2018, the court entered order granting plaintiff's motion to amend complaint and denying defendants' motions to dismiss as moot. On May 11, 2018, the court entered case management order governing discovery and pretrial dispositive motions practice. The parties completed discovery on or about September 18, 2018.

On December 3, 2018, defendant McNeil filed the instant motion for summary judgment, arguing the undisputed record evidence establishes he did not act under color of state law during his sexual encounter with plaintiff and thus plaintiff cannot establish a claim under § 1983. In support, defendant McNeil relies upon a memorandum of law, statement of material facts, and the following: 1) affidavit of Charles Edward Evans ("Evans"), an employee of the City of Lumberton; and 2) affidavit of David Williford ("Williford"), a detective with the City of Lumberton Police Department. That same day, defendant McNeil filed the instant motion for requests for admission to be deemed admitted, for leave to file amended dispositive motions, or for other alternative relief.

Also on December 3, 2018, defendant City of Lumberton filed the instant motion for summary judgment, arguing plaintiff has failed to establish a viable constitutional claim for municipal liability. In support, defendant City of Lumberton relies upon a memorandum of law, statement of material facts, and the following: 1) Evans's and Williford's affidavits (the same affidavits submitted in support of defendant McNeil's instant motion); 2) Evans's official job

2

description; and 3) a Lumberton Police Department investigation report, dated July 8, 2015.

On December 4, 2018, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court provided plaintiff notice of his right to respond to defendants' motions. Plaintiff, however, did not file responses to any of the motions.

## STATEMENT OF THE FACTS

In 2015, plaintiff was an inmate at the Scotland Correctional Institution. (Evans Aff. (DE 46-1) ¶¶ 3, 20). Plaintiff participated in the Scotland C.I.'s work release program, and he was assigned to defendant City of Lumberton's public works department. (Id. ¶ 20). On workdays, plaintiff took lunch breaks at the public works department's shop breakroom. (Id. ¶¶ 11, 21-22).

Defendant McNeil was employed at the Lumberton Public Works Department in the concrete pouring division. (Id. ¶¶ 16-17). Defendant McNeil took his lunch breaks in the same breakroom as plaintiff. (Id. ¶ 14, 18). However, defendant McNeil did not directly work with the Scotland C.I. inmates and he was not responsible for supervising their work. (Id. ¶¶ 17, 18).

Plaintiff alleges defendant McNeil sexually assaulted him in the bathroom located adjacent to the shop breakroom on three separate occasions. Plaintiff's verified complaint provides as follows:

> On July 8, 2015, plaintiff . . . was at the Department of Public Works on Cedar [Street] in Lumberton, NC, working as an inmate. At around . . . lunch break in the break room bathroom [of] the Department of Public Works building[,] defendant . . . McNeil walked into the bathroom and told the plaintiff . . . if he [did not] give him oral sex he would call the prison (Scotland Correctional Institute) and tell them . . . plaintiff . . . was asking for money and [cigarettes] and get the plaintiff put in [disciplinary segregation] and fired from his job.
>
> The plaintiff did give the defendant oral sex. The plaintiff . . . then spit the semen out to save for evidence. Upon returning to the prison the plaintiff gave the DNA evidence to detective Williford with [the] Lumberton Police Department. Detective Williford then followed an officer and plaintiff . . . to Scotland Memorial Hospital

3

and did a mouth swab to have a sample to test against the DNA.

(Compl. (DE 1-1) ¶¶ 5-10). In his verified amended complaint, plaintiff alleges defendant McNeil forced him to perform oral sex on two additional occasions in the public works department bathroom. (Am. Comp. (DE 17) at 2). Plaintiff also alleges that he informed his Lumberton public works supervisor, Charles Evans, about the abuse but Evans did not report the abuse to prison officials or the police. (Am. Compl. (DE 17) at 2).[1]

Plaintiff reported the assault to prison officials, who contacted the Lumberton Police Department. (Williford Aff. (DE 46-2) ¶¶ 8-9). The Lumberton Police Department initiated an investigation, but the Robeson County district attorney declined to pursue a criminal prosecution. (Id. ¶¶ 9, 20).

**DISCUSSION**

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

---

[1] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.  Analysis

   1.   Defendant McNeil

Defendant McNeil argues plaintiff cannot establish he acted under color of state law during the sexual encounters with plaintiff.[2] To establish liability under § 1983, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States and . . . that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 49 (1988); Davison v. Randall, 912 F.3d 666, 679 (4th Cir. 2019), as amended (Jan. 9, 2019). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West, 487 U.S. at 49 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)).

"[T]here is no specific formula for determining whether state action is present." Holly v. Scott, 434 F.3d 287, 292 (4th Cir. 2006) (quotation omitted). Instead, determining "what constitutes action under color of state law . . . is a matter of normative judgment, and the criteria lack rigid simplicity." Davison, 912 F.3d at 679-80 (quoting Holly, 434 F.3d at 292). The court must examine the "totality of the circumstances to determine if the action at issue 'bore a sufficiently close nexus with the State to be fairly treated as that of the State itself.'" Id. at 680 (quoting Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003)).

The United States Court of Appeals for the Fourth Circuit recently identified the factors that should govern the court's analysis of the color-of-law requirement. Id. at 680. The Fourth Circuit explained that "purportedly private actions bear a 'sufficiently close nexus' with the State to satisfy

---

[2]   Defendant McNeil admits engaging in sexual contact with plaintiff, but alleges the contact with consensual. (Answer (DE 38) ¶¶ 19-20).

6

Section 1983's color-of-law requirement when the defendant's challenged 'actions are linked to events which arose out of his official status'" or "[w]hen a defendant's 'status' as a public official 'enabled [him] to execute a challenged action in a manner that private citizens never could have . . . .'"  Id. (quoting Rossignol, 315 F.3d at 524, 526) (citing Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 343 (4th Cir. 2000); Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995)).  "Likewise, an official's conduct is more likely to amount to state action when it occurs in the course of performing an actual or apparent duty of his office [or] when the official used the power and prestige of his state office to damage the plaintiff." Id. (quotation omitted).

Applying the foregoing factors, the court finds plaintiff has not established a genuine issue of material fact regarding the "under color of state law" element of his § 1983 claim.  Defendant McNeil's "official duties" with the City of Lumberton were limited to working within the concrete pouring division.  He was not responsible for supervising plaintiff or any other inmates, his only interaction with the inmates occurred when he was on his lunch break, and he was not performing any duties of his position when the alleged assaults took place.  Accordingly, the court finds the alleged sexual assaults are not "linked to events which arose out of" defendant McNeil's official status, and that defendant McNeil did not commit the alleged assaults in the course of performing an official duty.  See Davison, 912 F.3d at 680 (discussing official status and course of performing official duty factors); Rossignol, 316 F.3d at 524 (noting "where action arises out of purely personal circumstances, courts have not found state action even where a defendant took advantage of his position as a public officer in other ways"); Briscoe v. LaHue, 663 F.2d 713, 721 n.4 (7th Cir. 1981) ("[Even] acts committed by a police officer . . . while on duty and in uniform are not under color of state law unless they are in some way related to the performance of police duties." (quotation

7

omitted)).

Defendant McNeil's status as a city employee also did not "enable" him to commit the constitutional violation "in a manner that a private citizen never could have." See Davison, 912 F.3d at 680. While defendant McNeil had access to plaintiff by virtue of his employment with the city, any private citizen visiting the public works department or any of the other inmates on the work crew could have committed the same assault.

Finally, the court examines whether plaintiff "used the power and prestige of his state office to damage plaintiff." Id. at 680. The only evidence suggesting defendant McNeil may have abused his power as a city employee is plaintiff's allegation that defendant McNeil threatened to contact Scotland C.I. prison officials and report that he committed misconduct. According to plaintiff, defendant McNeil stated "he would call [Scotland C.I. officials] and tell them . . . plaintiff . . . was asking for money and [cigarettes] and get . . . plaintiff put in [disciplinary segregation] and fired from his job" if plaintiff refused to perform oral sex on him. (Compl. (DE 1) ¶ 5). Defendant McNeil did not refer to his position with the city when he made the statement and did not otherwise overtly use the power of his position to harm plaintiff. However, the threat was arguably more substantial because it was made by an employee of the public works department where plaintiff was assigned. Scotland C.I. officials are more likely to discipline a prisoner if a city employee in the same department as the inmate reports misconduct. Drawing all reasonable inferences in plaintiff's favor, the court finds this factor weighs somewhat in favor of finding state action.[3]

---

[3] Notably, the cases finding state action based on use of the power and prestige of the state office involved extensive and overt use of state power in the course of committing the alleged violation. See Davison, 912 F.3d at 681 (holding defendant acted under color of state law where she "clothed" her Facebook Page in the power and prestige of her office and infringed the plaintiff's First Amendment rights by banning him from the page); Harris v. Harvey, 605 F.2d 330, 337 (7th Cir. 1979) (concluding defendant acted under color of state law where the challenged correspondence was drafted on official letterhead and identified him as an elected official, and where he made

The state action test, however, requires examination of the "totality of the circumstances" and "no one factor is determinative . . . ." See Davison, 912 F.3d at 680. Applying that standard, the court concludes plaintiff has not established the requisite "under color of state law" element. As set forth above, defendant McNeil's position did not involve supervising inmates or interacting with them in any official capacity, the assault occurred when defendant McNeil was on his lunch break, and any private citizen or inmate on the work crew could have committed the same assault or threatened to report plaintiff for misconduct. These factors support a finding that defendant McNeil's alleged actions were "purely personal" in nature and unrelated to his city employment, even if defendant McNeil "took advantage of his position" when he threatened to report plaintiff. See Davison, 912 F.3d at 680-81; Rossignol, 316 F.3d at 524; Briscoe, 663 F.2d at 721 n.4.

2.  Defendant City of Lumberton

Plaintiff also alleges defendant City of Lumberton is responsible for the alleged sexual assaults because he informed his direct supervisor, Charles Evans, about the assaults but Evans failed to notify city officials or otherwise protect him from further assaults. To establish municipal liability under § 1983, plaintiff must show "the constitutionally offensive acts of [the municipal employees were] taken in furtherance of some municipal 'policy or custom.'" Milligan v. City of Newport News, 743 F.2d 227, 229 (4th Cir. 1984) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). The existence of such a policy or custom can be established in one of four ways: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission [on the part of policymaking

---

discriminatory statements in his official capacity as a county judicial officer). Here, plaintiff has not produced similar evidence of use of state power. Additionally, in Davison, the state action factors all weighed in favor of finding the defendant acted under color of state law. See 912 F.3d at 680-81. As discussed above, here the majority of the Davison factors weigh against a finding of state action.

officials], such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 217 (4th Cir. 1999)).

Plaintiff has not established a claim for municipal liability under this standard. Plaintiff has not identified an express policy or custom, a decision of a person with final policymaking authority, or an omission on the part of policymaking officials that caused the alleged sexual assault. As defendant City of Lumberton notes, plaintiff has presented no evidence that a city official with policymaking authority was even aware of the alleged sexual assaults. See Connick v. Thompson, 563 U.S. 51, 61-62 (2011) (explaining plaintiff asserting claim for municipal liability premised on omission or failure to train theory must produce evidence that the municipal policymaker knew of and disregarded a known risk of harm). Plaintiff also has not identified evidence showing a "practice that is so persistent and widespread" that made the constitutional violation almost bound to happen. See Carter, 164 F.3d at 220 (noting a "meager history of isolated incidents" does not establish a municipal custom).

## CONCLUSION

Based on the foregoing, the court GRANTS defendants' motions for summary judgment (DE 43, 48), and DENIES as moot defendant McNeil's motion for requests for admissions to be deemed admitted, for leave to amend dispositive motions, or for other alternative relief (DE 47). The court DIRECTS the clerk to close this case.

SO ORDERED, this the 13th day of September, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge